# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ROBERT D. MORT RANTA | ) | Civil No. 1:12-cv-00505-CMH/TCB |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ROBERT D. MORT RANTA, | ) | |
| | ) | On appeal from |
| Appellant, | ) | |
| | ) | Bankruptcy Case No. 11-18842-RGM |
| v. | ) | |
| | ) | |
| THOMAS P. GORMAN, Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

## BRIEF OF APPELLANT

Daniel M. Press, VSB #37123<br>
dpress@chung-press.com<br>
CHUNG & PRESS, P.C.<br>
6718 Whittier Avenue, Suite 200<br>
McLean, Virginia 22101<br>
(703) 734-3800<br>
(703) 734-0590 [facsimile]<br>
Counsel for Debtor/Appellant

TABLE OF CONTENTS

Table of Contents.................................................................................................................. i

Table of Cases, Statutes and Other Authorities.................................................................. ii

Statement of the Basis of Appellate Jurisdiction................................................................ 1

Issues Presented.................................................................................................................. 1

Standard of Review............................................................................................................. 1

Statement of the Case.......................................................................................................... 2

ARGUMENT:

I.    <u>SOCIAL SECURITY BENEFITS MAY NOT BE INCLUDED IN THE CALCULATION OF DISPOSABLE MONTHLY INCOME</u>.......................................... 4

**Congress Has Reiterated the Protected Nature of Social Security Benefits in Bankruptcy** .............................................................................................. 4

*The Bankruptcy Code*........................................................................................................ 5

*The Social Security Act*..................................................................................................... 7

II.    <u>THE PLAN IS FEASIBLE</u>.................................................................................. 10

Conclusion......................................................................................................................... 12

TABLE OF AUTHORITIES

**Cases**

*In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).............................................. 10-11

*In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2010)................................................. 6

*Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011)................................................................. 6

*In re Buren*, 725 F.2d 1080 (6th Cir. 1984).................................................................... 10

*In re Carpenter*, 614 F.3d 930 (8th Cir. 2010)................................................................. 9

*In re Devilliers*, 358 B.R. 849 (Bankr. E.D. La. 2007)..................................................... 4

*In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006)........................................................ 6

*Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464 (2010)................................................ 6

*In re Herrmann*, 2011 WL 576753, No. 10-06523-JW (Bankr. D.S.C. Feb. 9, 2011).... 6-7

*In re Kibbe¸* 361 B.R. 302 (1st Cir. BAP 2007)............................................................ 6, 10

*In re Miller*, 445 B.R. 504 (Bankr. D.S.C. 2011)............................................................ 10

*Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973)........................................ 8

*In re Schanuth,* 342 B.R. 601 (Bankr.W.D.Mo.2006)...................................................... 11

*Washington State Department of Social and Health Services*, 537 U.S. 371 (2003)......... 8

**Constitution, Statutes and Rules**

11 U.S.C. § 101(10A)................................................................................................ 3, 5-6, 11

11 U.S.C. § 707(b)(2)........................................................................................................ 5

11 U.S.C. § 1325(b)(1)(B)................................................................................................. 2

11 U.S.C. § 1325(b)(2).................................................................................................... 3, 5

11 U.S.C. § 1325(b)(3)....................................................................................................... 5

11 U.S.C. § 1325(b)(4)....................................................................................................... 2

28 U.S.C. § 157................................................................................................................ 1

28 U.S.C. § 158(a)(3)....................................................................................................... 1

28 U.S.C. §§ 1334(a)....................................................................................................... 1

42 U.S.C. § 407........................................................................................................... 7-10


Other References

Social Security Amendments of 1983, House Conference Report No.
98-47 Joint Explanatory Statement of the Committee of Conference p. 153,
reprinted in 2 1983 U.S. Code Congressional and Administrative News 98th
Cong. First Session p. 443.............................................................................................. 9

4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy*
¶ 522.09[10][a] n.76 (16th ed. 2011)............................................................................. 10

Statement of the Basis of Appellate Jurisdiction

This is an appeal from an order of the Bankruptcy Court denying confirmation of the Debtor's Chapter 13 Plan [Docket #26]. The Order was entered on March 20, 2012, and the Notice of Appeal and Motion for Leave to Appeal were timely filed on April 2, 2012 [Docket #29, #31]. The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(a) and 157. Confirmation of a plan was a core proceeding over which the Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(3).

While this appeal is before the Court on the previously-filed Motion for Leave to Appeal, this Court entered a briefing schedule [Docket #3 in this Court], so Appellant is filing this merits brief in accordance therewith.

Issues Presented

The question presented on appeal is whether, for a below-median income debtor, the Debtor may properly exclude social security benefits from the calculation of current monthly income and thus projected disposable monthly income for purposes of confirmation of a Chapter 13 Plan.

Standard of Review

As this appeal involves a pure question of law, this Court's review is *de novo.*

Statement of the Case

The Debtor, Robert D. Mort Ranta, filed a voluntary petition under Chapter 13 of the U.S. Bankruptcy Code on December 12, 2011 [Docket #1], and after an extension of time was granted, timely filed his Schedules [Docket #18] and Chapter 13 Plan [Docket #19] on January 16, 2012.

The Debtor's Schedule I showed that the total household income of the Debtor and his spouse, net of payroll deductions, was $7492.10, including $3319 in social security benefits for the Debtor and his wife and minor daughter [Docket #18 at p.13]. The Debtor's monthly expenses on Schedule J were scheduled as $6967.24, leaving $524.86 in disposable income with which a plan could be funded [*Id.,* p.14]. Debtor's plan proposed to pay $525 per month for 60 months (for total funding of $31,500) [Docket #19], although because his household income is below the statewide median, under 11 U.S.C. § 1325(b)(4), he was only required to dedicate 36 months of projected disposable income to his plan [Docket #18, at 21 line 17].

After requesting certain documentation, the Trustee filed an objection to confirmation stating:

> **Violation of 11 U.S.C. §1325(b)(1)(B) and §521(3)** - Failure to submit disposable income to the payment of creditors under this Chapter 13 Plan and failure to cooperate with the Office of the Chapter 13 Trustee.
>
> • Trustee requested the following documents from Debtor at the January 24, 2012 creditor's meeting and again on January 28, 2012 in an e-mail to Debtor's counsel, in order to verify Debtor's Schedule I and J figures (Debtor is below median). No documents have not been provided in response to Trustee's request. Specifically, Trustee needs the following to evaluate Debtor's Plan:
>
> 2011 W-2 for Mrs. Ranta.
> Last six months bank and credit card statements.
> Last two (2) quarterly (or six (6) months monthly) statements for the insurance claimed at item 4(b) of Schedule I, and 11 of Schedule J. Debtor's testimony at the creditor's meeting raised questions as to whether correct numbers were used, and whether the premiums were quarterly or monthly.
> Backup documents to support the following expenses listed on Schedule J:

2

      Electricity - $225.00/month
      Water and Sewer - $50.00/month
      Telephone - $100.00/month
      Cable/Internet/Phone - $352.00/month
      Clothing - $200.00/month
      Uninsured Medical and dental expenses - $145.00/month
      Transportion - $500.00/month
      Health insurance - $363.00/month
      Auto insurance - $75.00/month
      Personal property taxes - $20.00/month
      HELOC - $165.00/month
      Personal care - $100.00/month
      Wife's debt - $500.00/month
      School expenses - $100.00/month

[Docket #22].

      The documentation was timely provided prior to the confirmation hearing on March 14, 2012.

      At the hearing, Debtor agreed that some expenses as stated on Schedule J may have been overstated, but pointed out that of the $7492.10 in Schedule I income, $3319 comes from social security for himself ($1847) and his wife and minor daughter ($1472). [Transcript 3/14/12 at 5-6]. The parties agreed on the record that the best case scenario for the trustee would be that correcting the expenses would bring the $525 disposable income up to $1000, if the social security is included in income. [Transcript at 5: 10-15]. With the social security excluded, even with any overstatement of expenses, the parties agreed that his disposable income would be negative, and that there would be no minimum income-based plan funding requirement. [Transcript 3:11-22, 4:8-11]. However, the Bankruptcy Court found that despite the exclusion of social security from the definition of "current monthly income" ("CMI") in 11 U.S.C. § 101(10A), and the use of CMI as the starting point for determining disposable income in § 1325(b)(2), social security should not be excluded from the calculation of disposable income [Transcript at 14]. Thus the Court denied confirmation. This appeal followed.

ARGUMENT

SOCIAL SECURITY BENEFITS MAY NOT BE INCLUDED IN THE CALCULATION OF DISPOSABLE MONTHLY INCOME

Since the 1930s, a consistent feature of the consumer credit marketplace has been that benefits under the Social Security Act are protected from seizure by the beneficiary's creditors. When lenders extend credit, they do so with the knowledge that if the borrower defaults, any Social Security benefits the borrower becomes entitled to receive will be shielded from collection efforts. Individuals become eligible to receive Social Security benefits by virtue of age, disability, or the death of certain family members. Creditors extend credit and enter into consumer transactions with full knowledge that these eventualities could come to pass for any individual, entitling that person to receive and retain protected income. The protected nature of Social Security benefits is a recognized feature of doing business in the consumer credit market.

This appeal addresses the question of whether a bankruptcy court may order debtors to pay their protected Social Security income to creditors as a condition to confirmation of a chapter 13 plan. The answer is no. There is nothing unfair about this outcome. *Vis a vis* the debtor's protected Social Security benefits, this result does nothing more than place creditors in the same position they would be in absent the bankruptcy filing. *In re Devilliers*, 358 B.R. 849, 866 (Bankr. E.D. La. 2007).

**Congress Has Reiterated the Protected Nature of Social Security Income in Bankruptcy**

Congress recognized the protected status of Social Security benefits in bankruptcy in several distinct enactments. These enactments appear in both the Social Security Act and in the Bankruptcy Code.

*The Bankruptcy Code*

Section 101(10A) of the Bankruptcy Code (11 U.S.C.) defines "current monthly income" as:

> (A) . . . the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on —
> (I) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) . . . and
> (B) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ***but excludes benefits received under the Social Security Act.***

§ 101(10A) (emphasis added).  Section 1325(b)(2) then goes on to define "disposable income" by using "current monthly income" as the starting point:

> For purposes of this subsection, the term "disposable income" means ***current monthly income*** received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> (ii) for charitable contributions . . . in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made.

§ 1325(b)(2) (emphasis added).   The trustee's objection, and the Court's ruling, ignored this exclusion, likely based on confusion about the effect of § 1325(b)(3), which, for over-median debtors, uses the "means test" expense standards in § 707(b)(2) to calculate the *expense* side of the equation.  However, the requirement in § 1325(b)(2) that current monthly *income* is the starting point applies to both above- and below-median debtors.

While neither the 4th Circuit nor this District Court have had occasion to consider this issue (at least in a published opinion), it is clear that the case law supports this view. *See, e.g., In re Kibbe*¸ 361 B.R. 302, 312 (1st Cir. BAP 2007) (income exclusions such as social security are not to be included in projected disposable income for below median debtors); *Baud v. Carroll*, 634 F.3d 327, 331 (6th Cir. 2011) ("the calculation of a debtor's projected disposable income: (a) must not include items—such as benefits received under the Social Security Act—that are excluded from the definition of currently monthly income set forth in § 101(10A)"); *In re Barfknecht*, 378 B.R. 154, 162 (Bankr. W.D. Tex. 2010) (social security excluded in calculating disposable income for below-median debtors).

None of the cases cited by the Trustee in his opposition to the Debtor's Motion for Leave to Appeal directly address the exclusion of Social Security from the disposable income calculation. *In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006) does not mention social security, and simply addresses the whether the means test for above-median debtors is forward-looking or backward-looking, as resolved later by the Supreme Court in *Hamilton v. Lanning*, __ U.S. __, 130 S.Ct. 2464 (2010). And *In re Herrmann*, 2011 WL 576753, C/A No. 10-06523-JW (Bankr. D.S.C. Feb. 9, 2011) relates to an above-median debtor, and holds only that "the issue is not whether Mr. Herrmann can be forced to use his social security income to pay his pre-petition debts, but rather whether Congress intended to protect a joint debtor's social security from being to be [sic] used to pay his own normal and customary living expenses. This Court does not believe that was Congress's purpose or intent. In this case, Debtors' joint living expenses should be allocated fairly between them and Mrs. Herrmann should not be allowed to absorb more than her fair share of the expenses at the expense of her creditors. If done in this case, Mrs. Herrmann

6

will have more income available to pay her creditors." *Herrmann* was decided on good faith grounds, and resulted in denial of confirmation because the husband's non-social security benefits were being applied to pay the wife's expenses, allowing the wife to retain her social security. Here there are no such issues; both spouses work, and both spouses receive social security, so there is no issue of improper allocation or bad faith as in *Herrmann*. In fact, not a single published case (or unpublished case that the undersigned could find) supports the extreme position taken by the Bankruptcy Court in direct contravention of the language of the Bankruptcy Code.

***The Social Security Act.***

If the Bankruptcy Code were not clear enough, the Social Security Act confirms that Congress expressly intended to protect social security benefits from having to be paid to creditors in Chapter 13. The Social Security Act's basic provision protecting benefits from creditors is currently found in subsection (a) of 42 U.S.C. § 407. This subsection contains both a general prohibition against subjecting Social Security benefits to any "legal process" as well as a specific directive removing the benefits from the reach of all bankruptcy laws. The statute provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, *or to the operation of any bankruptcy or insolvency law*.

42 U.S.C. § 407(a) (emphasis added). The Supreme Court has had occasion to interpret the term "other legal process" found in § 407(a). According to the Court, "other legal process" in § 407(a) refers not only to formal execution measures, but also to other processes that "seem to require the utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate

7

one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability." *Washington State Department of Social and Health Services*, 537 U.S. 371, 385 (2003).

Two common occurrences in any chapter 13 bankruptcy case would violate § 407(a) if they had an impact on Social Security benefits. First, the filing of a bankruptcy case transfers the debtor's interest in many forms of property from the debtor to the bankruptcy estate. Treating the filing of a bankruptcy case as transferring the debtor's property interest in Social Security benefits from the debtor to the bankruptcy estate would be a transfer of control over the funds from the beneficiary to another entity in contravention of § 407(a). Second, a bankruptcy court's order related to approval of a chapter 13 plan may direct portions of the debtor's income to be paid to a trustee. The trustee in turn pays these funds toward the discharge of pre-bankruptcy debts. A bankruptcy court order having the effect of making a debtor contribute Social Security income toward payment of pre-petition debts under a chapter 13 plan would violate § 407(a).[1] The final phrase of § 407(a) gives the broadest and strongest possible protection to Social Security benefits in the context of bankruptcy. This language mandates that Social Security benefits not be subject to the operation of *any* bankruptcy law.

---

[1] The voluntary nature of the initial bankruptcy petition filing cannot be construed as a waiver of § 407(a)'s protections. The Supreme Court held long ago that beneficiaries who voluntarily signed up for state-sponsored welfare programs could not be treated as having agreed to a waiver of their rights under § 407(a) by seeking these benefits. *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973) (requirement to reimburse state for welfare benefits out of Social Security income violated § 407(a)).

Finding that certain bankruptcy courts had been lax in enforcing the protections of § 407,[2] Congress in 1983 amended the Social Security Act to make the protections for Social Security benefits in the bankruptcy process as unambiguous as possible. Congress re-codified § 407 and added a new subsection 407(b) which provides:

> (b) No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section. 42 U.S.C. § 407(b).

The courts have construed § 407 to exclude Social Security benefits from property of the bankruptcy estate in chapter 7 and in chapter 13 cases. Social Security benefits therefore have a status distinct from that of exempt property. Exclusion of the benefits from the bankruptcy estate precludes any attempt by the bankruptcy court or trustee to exercise control over Social Security income. *In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010) (construing applicability of § 407 in chapter 7: "We conclude § 407 must be read as an exclusion provision, which automatically and completely excludes social security proceeds from the bankruptcy estate, and not as an

---

[2] The relevant House Conference Report stated as follows:
Since 1935, the Social Security Act has prohibited the transfer or assignment of any future social security or SSI benefits payable and further states that no money payable or rights existing under the Act shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law. Based on the legislative history of the Bankruptcy Reform Act of 1978, some bankruptcy courts have considered social security and SSI benefits listed by the debtor to be income for purposes of a Chapter XIII bankruptcy and have ordered SSA in several hundred cases to send all or a part of a debtor's benefit check to the trustee in bankruptcy. As a correction to misinterpretation of existing law, the Conference Committee adopts the House language of proposed Social Security legislation. This bill "[s]pecifically provides that social security and SSI benefits may not be assigned notwithstanding any other provision of law, including P.L. 95-598, the "Bankruptcy Reform Act of 1978". Social Security Amendments of 1983, House Conference Report No. 98-47 Joint Explanatory Statement of the Committee of Conference p. 153, reprinted in 2 1983 U.S. Code Congressional and Administrative News 98th Cong. First Session p. 443.

exemption provision which must be claimed by the debtor."); *In re Buren*, 725 F.2d 1080, 1085-87 (6th Cir. 1984); *In re Miller*, 445 B.R. 504, 507 (Bankr. D.S.C. 2011) ("the language of section 407(a) of the Social Security Act unambiguously prevents a debtor from being forced to use Social Security income to fund his chapter 13 plan."). *See also* 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 522.09[10][a] n.76 (16th ed. 2011).

Both the Bankruptcy Code and the Social Security Act are clear and unambiguous in excluding social security benefits from inclusion in disposable income that must be paid to creditors. Accordingly, the Bankruptcy Court erred in concluding that social security must be dedicated to the plan for below-median income debtors.

THE PLAN IS FEASIBLE

There is no question that the plan in this case is *in fact* feasible. The trustee maintains that the Debtors have *extra* income, not too little to fund the plan. But the Trustee and the Bankruptcy Court took the position that if social security is excluded from projected disposable income, it must also be excluded from the feasibility analysis. This is incorrect.

As the First Circuit BAP held in *Kibbe*, the "definition of 'projected disposable income' does not preclude a debtor's use of available monies excluded from the definition (e.g., the Income Exclusions [i.e., social security]) "to support the feasibility of the debtor's plan." 361 B.R. at 314 n.11. As stated in *In re Alexander*, 344 B.R. 742, 751 (Bankr. E.D.N.C. 2006), "To veterans of Chapter 13 practice, it runs afoul of basic principles to suggest that a debtor with no disposable income can nonetheless propose a confirmable plan. Yet BACPA permits precisely that." The Court continued in footnote 5: "***Plan feasibility is no longer dictated by the***

10

*disposable income calculation.* The court disagrees with the outcome in *Schanuth* where the court determined that the debtors' plan was infeasible because the debtors' plan payments exceeded disposable income as calculated under the new law. *In re Schanuth,* 342 B.R. [601,] 604-06 (Bankr.W.D.Mo.2006). The male debtor received social security benefits that had been excluded from the currently monthly income calculation under § 101(10A)(B). The court said that, in order to propose a feasible plan, the debtors could voluntarily add the social security benefits to their disposable income calculation. *Id.* This view of feasibility appears to be based upon the old definition of disposable income." In fact, *Schanuth* is the only case that questioned feasibility based on the exclusion of social security, and even that case allowed it to be voluntarily contributed (as it is, to a large extent here) to render the plan feasible.

The Debtor *in reality* has the income available to fund the plan. He has voluntarily agreed to pay more than statutorily required. This does not render the plan infeasible.

Given the clear statutory language, and the foregoing authorities, is apparent that the Bankruptcy Court erred in requiring the inclusion of social security benefits from the calculation of projected disposable income.

Conclusion

WHEREFORE the Debtor/Appellant respectfully requests that this honorable Court allow the Motion for Leave to Appeal, and on the merits reverse the Order of the Bankruptcy Court and overrule the Trustee's objection to confirmation.

Dated: May 21, 2012.

Respectfully submitted,

/s/ Daniel M. Press
Daniel M. Press, VSB #37123
dpress@chung-press.com
CHUNG & PRESS, P.C.
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
(703) 734-3800
(703) 734-0590 [facsimile]
Counsel for Debtor/Appellant

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of May, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>Thomas P. Gorman
>Chapter 13 Trustee
>300 N. Washington Street, #400
>Alexandria, VA 22314

And I hereby certify that I will mail the document by U.S. mail to the following non-filing users:

>None

>/s/ Daniel M. Press
>Daniel M. Press, VSB #37123
>dpress@chung-press.com
>CHUNG & PRESS, P.C.
>6718 Whittier Avenue, Suite 200
>McLean, Virginia 22101
>(703) 734-3800
>(703) 734-0590 [facsimile]
>Counsel for Debtor/Appellant