**Case No.: 1:12-cv-00505-CMH-TCB**

---

# UNITED STATE DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

---

**ROBERT D. MORT RANTA,**
            Appellant,

v.

**THOMAS P. GORMAN,**
            Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA,
CASE NO. 11-18842-RGM
THE HONORABLE JUDGE ROBERT G. MAYER

---

## BRIEF OF THE APPELLEE, THOMAS P. GORMAN

---

Thomas P. Gorman
OFFICE OF CHAPTER 13 TRUSTEE
300 N. Washington Street, Suite 400
Alexandria, VA 22314
Phone: (703) 836-2226
Fax: (703) 836-8120

Appellee
Self-Represented

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ i

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ................................... 1

JURISDICTION ........................................................................................... 1

ISSUE PRESENTED ................................................................................... 1

STANDARD OF REVIEW .......................................................................... 1

STATEMENT OF THE CASE ..................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................... 5

ARGUMENT ................................................................................................ 6

    I.    Nothing Under The Bankruptcy Code Nor The Social Security Act Prohibits A Bankruptcy Court From Determining A Debtor's Actual Ability To Repay His Creditors Under A Chapter 13 Plan ........................................................................ 6

        A.    Neither The Language Nor The Public Policy Underlying Section 207 Of The Social Security Act Mandates A Wholesale Exclusion Of Social Security Benefits From Voluntary Bankruptcy Proceedings ..................................................................... 7

        B.    Social Security Benefits Are Not Included In Current Monthly Income Calculations So As Not To Prejudice Debtors When Applying The Chapter 7 Or Chapter 13 Means Test Analysis, But Exclusion Of Such Does Not Negate A Debtor's Actual Ability To Repay Creditors ................................................................. 10

        C.    In Determining A Below Median Income Debtor's Disposable Income, Schedules I And J Control, Which Expressly Includes Social Security Benefits ........................... 12

    II.    Nothing in the Social Security Act Grants A Debtor Immunity From Satisfying The Good Faith Requirement Under 11 U.S.C. §1325(a)(3) ................................................. 15

CONCLUSION ............................................................................................ 18

CERTIFICATE OF SERVICE ................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011) .............................................................. 12

*Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860 (4th Cir. 1994) .................................... 1

*Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895 (4th Cir. 1996). .................... 1

*Hamilton v. Lanning*, 130 S.Ct. 2464 (2010) ........................................................ 12, 13

*In re Cranmer*, 433 B.R. 391 (Bankr. D. Utah 2010) .................................................... 14

*In re Edmunds*, 350 B.R. 636 (Bankr. D.S.C. 2006) ................................................... 12

*In re Herrmann*, 2011 WL 576753, C/A No. 10-06523-JW (Bankr. D.S.C. Feb. 9, 2011) ......... 12

*In re Merry-Go-Round Enterprises, Inc.*, 180 F.3d 149 (4th Cir. 1999) ....................... 1

*In re Morris*, 385 B.R. 823 (E.D. Va. 2008) ............................................................... 2

*In re Nicolas*, 458 B.R. 516 (Bankr. E.D. Ark. 2011) ........................................... 13, 14

*Mains v. Foley*, 2012 WL 612006 (W.D. Mich. Feb. 24, 2012) ....................... 8, 15, 16

*Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973) ................................. 7

*Rodriguez v. Perales*, 86 N.Y.2d 361 (1995) ............................................................ 7

*Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007) ........ 13

## STATUTES

11 U.S.C. §101(10A) ........................................................................................ 10, 12

11 U.S.C. §1325(a) ....................................................................................... 5, 11, 15

11 U.S.C. §1325(a)(3) ......................................................................................... 15, 16

11 U.S.C. §1325(b)(3) ................................................................................... 10, 12, 13

11 U.S.C. §1325(b)(4) .............................................................................................. 10

11 U.S.C. §407(a) ............................................................................................... 7, 16

11 U.S.C. §707(b) ................................................................................................ 10

28 U.S.C. §158(a) ................................................................................................. 1

42 U.S.C. §1383(g) ............................................................................................... 7

42 U.S.C. §407(a) ................................................................................... 7, 8, 9, 15

## RULES

Fed. R. Bankr. P. 8013 ......................................................................................... 1

Fed. R. Bankr. P. 9009 ....................................................................................... 13

## OTHER AUTHORITIES

Soc. Sec. Admin., *Disability Benefits*, SSA Pub. No. 05-10029, 4, 12 (2011) ............................... 8

Soc. Sec. Admin., *Understanding the Benefits*, SAA Pub. No. 05-10024, 4 (2012) ................. 7, 8

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument as to all issues relating to this appeal.


## JURISDICTION

This matter is on appeal from the United States Bankruptcy Court for the Eastern District of Virginia.  The United States District Court for the Eastern District of Virginia has jurisdiction to hear this case under 28 U.S.C. §158(a).


## ISSUE PRESENTED

Whether a below median income debtor's Social Security benefits may be considered in confirming a Chapter 13 Plan?


## STANDARD OF REVIEW

This is an appeal from a decision issued by the United States Bankruptcy Court for the Eastern District of Virginia.  Upon appellate review, a bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness." Fed. R. Bankr. P. 8013.  A bankruptcy court's conclusion of law and statutory interpretation of the Bankruptcy Court is subject to *de novo* review on appeal. *In re Merry-Go-Round Enterprises, Inc.*, 180 F.3d 149, 154 (4th Cir. 1999) (citing *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994)). Where there are issues that present both questions of law and fact, factual inquiries are reviewed by a clearly erroneous standard, and the legal conclusions derived therefrom are reviewed *de novo*. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).  Finally, a

1

bankruptcy court's discretionary decisions are reviewed for abuse of discretion. *In re Morris*,

385 B.R. 823, 828 (E.D.Va. 2008).


## STATEMENT OF THE CASE

The Appellant, Robert D. Mort Ranta ("Debtor"), initiated this Chapter 13 case by filing

a voluntary petition on December 12, 2011. (R. at 1).  Debtor filed a Chapter 13 Plan on January

16, 2012. (R. at 2, 63-69).  Debtor's monthly income falls below the state median income level

for a household of three. (R. at 37).  Debtor's Schedule I and J filed with his Chapter 13 Plan

states $7,492.10 in monthly income and $6,967.24 in monthly expenses, respectively, resulting

in $524.86 of monthly net income. (R. at 67-68).

The proposed Plan listed $664,253.83 in total secured debt, $21,276.00 in total non-

priority unsecured debt, and $0.00 in total priority debt. (R. at 63).  Debtor's Plan proposed

$525.00 in monthly payments for 60 months, with a total Plan funding in the amount of

$31,500.00 and a 0.42% distribution to unsecured creditors. (R. at 63-64).  From the $31,500.00,

the Plan was to pay $20,000.00 in mortgage arrears, $8,295.00 in credit card debt separately

classified under Section 4B to be paid at 100% because they were the joint debts of Debtor and

his non-filing spouse, and 0.42% of other unsecured debt which amounts to $89.59. (R. at 26, 64-

65).  Debtor's Schedule A shows that Debtor's residence has $55,746.17[1] in equity, not taking

into account costs of sale. (R. at 19).

The Appellee, Thomas P. Gorman, is the Chapter 13 Trustee in this case ("Trustee").

Trustee objected to Debtor's Plan on February 10, 2012 for failure to submit disposable income

---

[1] While Debtor's Schedule A lists the value of his real property at $720,000.00, Fairfax County's
2012 land records show that the property is valued at $742,270.00.

2

to the payment of creditors and failure to cooperate with the Office of the Chapter 13 Trustee. (R. at 3, 51-53).

Due to conflicting testimony and statements between Debtor and Debtor's counsel at the meeting of creditors on January 24, 2012, Trustee requested documents to support the accuracy of the expenses claimed on Debtor's Schedule J. (R. at 30, 68).  Trustee was not provided with the necessary supporting documents to enable him to fully evaluate Debtor's proposed Plan by the deadline for his objection to the Plan, thus Trustee based his initial objection on the limited grounds pertaining to Debtor's overstated expenses claimed on his Schedule J. (R. at 51-53). The documents were ultimately provided, and the parties proceeded forward at the March 14, 2012 confirmation hearing on the limited issue of whether Social Security income should be included in Debtor's income analysis, thereby rendering Debtor's other claims to expenses moot. (R. at 3; Hr'g Tr. 3-4, Mar. 14, 2012).

Trustee argued that since Debtor is below median income, Schedules I and J would be the mechanisms applied in evaluating his projected disposable income. (Hr'g Tr. 4, Mar. 14, 2012). As such, if Debtor's Schedule J were adjusted downward to eliminate any overstated expense items, it would show monthly net income in the amount of $928.20. (Hr'g Tr. 5, Mar. 14, 2012). Further, if Debtor were to exclude all his Social Security benefits in his projected disposable income analysis, then Debtor would be left with a disposable income figure that would not be feasible in supporting the amount of the proposed Plan payments and his Plan could not be confirmed. (Hr'g Tr. 4, Mar. 14, 2012).

On the other hand, while Debtor conceded that some of his expenses stated on Schedule J were overstated, he argued that since $3,319.00 of his income stated on Schedule I is from Social Security benefits, any overstatement of expenses would be negated by the fact that Debtor was

not required to provide those Social Security benefits in determining his disposable income. (Hr'g Tr. 3, 5-6, Mar. 14, 2012).  Debtor contended that by hypothetically excluding his Social Security benefits, his disposable income would then be negative under any scenario, even if his claimed expenses were corrected to reflect reality. (Hr'g Tr. 5-6, Mar. 14, 2012).  In discussing the extent of which Social Security benefits should be factored into confirming a Chapter 13 plan, Debtor argued that while Social Security benefits should be excluded from the disposable income calculations, he may still choose to include such benefits for the purposes of determining whether a plan is feasible because in such cases, "Essentially, it's not necessary to meet the other requirements for confirmation..." (Hr'g Tr. 8, Mar. 14, 2012).

Upon the court's inquiry, Debtor proffered that if some of his expenses were corrected on Schedule J then it would reflect a monthly net income of approximately $1,000.00 a month. (Hr'g Tr. 5, Mar. 14, 2012).  Debtor also affirmed the court's assertion that if Debtor were to pay $1,000.00 a month under his Chapter 13 Plan, then Debtor would be able to repay all of his creditors in full. (Hr'g Tr. 10, Mar. 14, 2012).  Conversely, if Debtor were allowed to dictate his proposed monthly payment of $525.00 a month despite his clear ability to repay his creditors in full, then most of the Plan payments would go to secured creditors and unsecured creditors would receive only 0.42% repayment on their claims. (Hr'g Tr. 11, Mar. 14, 2012).

The bankruptcy court agreed with Trustee's position that Social Security benefits should be included in determining projected disposable income for below median debtors and a debtor's ability to repay his creditors. (Hr'g Tr. 13-15, Mar. 14, 2012).  The court discussed Congress's intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and the perception leading up to that legislation that some debtors were abusing the bankruptcy process by not paying what they were fully capable of. (Hr'g Tr. 13-14, Mar. 14,

2012).  As a result, part of what Congress implemented through BAPCPA was utilizing

mechanisms that are "intended to make sure people pay for what they can actually afford..."

(Hr'g Tr. 14, Mar. 14, 2012).  In this case, the court found that Debtor could afford to make

greater payments through his Chapter 13 Plan primarily due to his Social Security income. (Hr'g

Tr. 14, Mar. 14, 2012).  However, if Debtor did not wish to include his Social Security benefits

on the income side of his projected disposable income analysis, then he could not apply a double

standard by factoring in his Social Security benefits when considering the expense side of his

projected disposable income analysis either. (Hr'g Tr. 14, Mar. 14, 2012).  As a result, Debtor's

Plan would not be feasible. (Hr'g Tr. 14, Mar. 14, 2012).  Accordingly, the Court denied

confirmation of Debtor's proposed Plan and sustained Trustee's disposable income objections

regarding the overstated Schedule J expenses. (R. at 3; Hr'g Tr. 14-15, Mar. 14, 2012).

An Order Denying Confirmation of Plan was entered on March 20, 2012, from which

Debtor ensued the present appeal. (R. at 3, 54, 55-62).


## SUMMARY OF THE ARGUMENT

Trustee-Appellee argues that since Debtor-Appellant is below median income, his Social

Security benefits must be considered when evaluating Debtor's actual ability to repay his

creditors and in determining whether Debtor's proposed Chapter 13 Plan satisfies the other

provisions under 11 U.S.C. §1325(a) required for confirmation.

Nothing in the Social Security Act nor the Bankruptcy Code allows Debtor to take

advantage of the protections provided by an entirely voluntary Chapter 13 proceeding, retain his

residence which holds equity, obtain a discharge on the balance of his unpaid debts, while only

repaying his unsecured creditors at a 0.42% distribution rate despite Debtor's ability to repay all

of his creditors in full.  But for the classification of Social Security benefits and exclusion from

calculations of Debtor's current monthly income, Debtor's gross monthly income is above state

median income levels.  Further, neither the Social Security Act nor the Bankruptcy Code entitles

Debtor to dictate his monthly Plan payments, nor grants Debtor immunity from demonstrating

that his Chapter 13 Plan was proposed in good faith with the sincere intent to repay his debts.

Essentially, Debtor seeks to obtain the benefits of a Chapter 13 proceeding while avoiding his

obligation to repay his creditors despite his ability to do so—this is the specific type of

bankruptcy abuse that Congress intended to eradicate by enacting BAPCPA.

Thus, the bankruptcy court below did not err when it found that Debtor's proposed

Chapter 13 Plan could not be confirmed as it did not provide for payments consistent with

Debtor's actual ability to repay his creditors in full.

## ARGUMENT

### I.    Nothing Under The Bankruptcy Code Nor The Social Security Act Prohibits A Bankruptcy Court From Determining A Debtor's Actual Ability To Repay His Creditors Under A Chapter 13 Plan

Debtor argues that since his proposed Chapter 13 Plan would be funded in part by Social

Security benefits, any objection to the amount of his monthly payments would be irrelevant as he

could not be compelled to apply such benefits to fund his Chapter 13 Plan.  However, Debtor's

argument is based on a misinterpretation of Section 207 of the Social Security Act and ignores

the fundamental notion that Chapter 13 bankruptcy is a voluntary process for debtors who

sincerely intend to repay their creditors to the best of their abilities in exchange for a fresh start.

**A.     Neither The Language Nor The Public Policy Underlying Section 207 Of The Social Security Act Mandates A Wholesale Exclusion Of Social Security Benefits From Voluntary Bankruptcy Proceedings**

Social Security benefits are paid to individuals who are retired, disabled, survivors of deceased workers, or those who are dependents of Social Security beneficiaries. Soc. Sec. Admin., *Social Security Understanding the Benefits*, SAA Pub. No. 05-10024, 4 (2012).  Due to the public policy in support of assisting the aforementioned groups of people and the policy underlying the Social Security program itself, Section 207 of the Social Security Act provides:

> The right of any person to any future payment under this title shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. §407(a).

Therefore, an individual is generally protected from involuntarily ceding his Social Security benefits to any public or private entity that may attempt to collect such benefits in satisfaction of a debt or other obligations through the legal process.[2] However, the Chapter 13 process is entirely voluntary and provides immense benefits and protections to a debtor seeking financial relief and a fresh start.  A debtor need only repay his creditors to the best of his abilities for a set period of time in exchange for a discharge

---

[2] Appellant argues that the voluntary nature of the present Chapter 13 bankruptcy petition cannot be construed as a waiver of the protections provided under 11 U.S.C. §407(a), and in support cites the Supreme Court's decision in *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), which held that Social Security beneficiaries who voluntarily participate in state-sponsored welfare programs could not be treated as having waived their rights under 11 U.S.C. §407(a).  However, the Court's decision in *Philpott* was expressly superseded by Congress in 1974 when it enacted 42 U.S.C. §1383(g) as discussed in *Rodriguez v. Perales*, 86 N.Y.2d 361, 365 (1995).  Thus, the general protections set forth under 42 U.S.C. §407(a) are not absolute and are subject to exceptions.

on the remaining balance of his debts.  In some cases, the feasibility of a debtor's Chapter

13 plan necessitates contribution of his Social Security benefits toward his monthly plan

payment.  The use of Social Security benefits in funding a voluntary Chapter 13

repayment plan does not run afoul to the language in Section 207 of the Social Security

Act because the statute prohibits "a third party's compelled acquisition through legal

process of someone else's Social Security benefits." *Mains v. Foley*, 2012 WL 612006 at

*5 (W.D. Mich. Feb. 24, 2012).  A debtor's use of his Social Security benefits to fund a

Chapter 13 plan is "no different in principle than a Social Security beneficiary's decision

to use his or her benefits to purchase anything of value that the beneficiary desires.  No

one would suggest that such a beneficiary has immunity from paying the restaurant bill

he or she incurred just because the cash to pay came from Social Security benefits." *Id.*

The public policy underlying Section 207 is even more compelling when it comes

to protecting certain benefits from involuntary acquisition such as Social Security

disability benefits (paid to those who cannot work due to a medical condition and

monthly disability payments are based on a beneficiary's average lifetime earnings) and

Supplemental Security Income (SSI is financed from general tax revenues not from

Social Security taxes, and provided to those who have limited income and resources),

which are paid to beneficiaries as their critical or sole source of income necessary for

their basic welfare. Soc. Sec. Admin., *Disability Benefits*, SSA Pub. No. 05-10029, 4, 12

(2011); *Understanding the Benefits*, at 17.

On the other hand, Social Security retirement benefits are not meant to be a

beneficiary's critical or sole source of income, but instead are meant to augment a

retiree's pension, savings, and investment incomes. *Understanding the Benefits*, at 4

("Social Security was never meant to be the only source of income for people when they retire.... Social Security replaces about 40 percent of an average wage earner's income after retiring....")  Thus, the prohibition against subjecting Social Security benefits to any operation of bankruptcy law under Section 207 cannot be construed in the same manner, for example, in a situation where a debtor who was forced into an involuntary Chapter 7 proceeding and his Social Security disability benefits were being seized by the trustee for the benefit of his creditors, and in situation such as the present case, where a debtor voluntarily avails himself to a Chapter 13 proceeding in order to retain his home and partially repay his creditors by using Social Security retirement benefits in exchange for a discharge on the remaining balance of his unsecured debts.

In the present case, Debtor's Social Security benefits are meant to supplement his retirement income, allowing him to have a more comfortable retirement.  Indeed, but for the classification of Debtor's Social Security benefits as such, his gross monthly income falls above the state median income level.  Further, Debtor voluntarily initiated this Chapter 13 proceeding, presumably because he desired to retain his home that has equity in it.  Thus, in order for Debtor to retain the benefits of his Chapter 13 case—namely, protection of the automatic stay during the pendency of his case while he repays his mortgage arrears and discharge of the balance of his unsecured debt—he must repay his creditors to the best of his abilities for the duration of his Chapter 13 Plan.  Nothing under the Social Security Act nor the Bankruptcy Code exempts Debtor from satisfying this element that is required of all Chapter 13 debtors.  Most importantly, Debtor is not compelled to remain in his Chapter 13 case, and therefore his Social Security benefits are not being forcefully acquired by a third party for the purposes of satisfying his debts.

**B.     Social Security Benefits Are Not Included In Current Monthly Income Calculations So As Not To Prejudice Debtors When Applying The Chapter 7 Or Chapter 13 Means Test Analysis, But Exclusion Of Such Does Not Negate A Debtor's Actual Ability To Repay Creditors**

Some of the most significant provisions Congress enacted through BAPCPA were the changes to the requirements that determined a debtor's eligibility in seeking the benefits and protections under a Chapter 7 or Chapter 13 bankruptcy proceeding.  Such changes were meant to prevent debtors from abusing the bankruptcy process by making it more difficult for debtors to file for Chapter 7 bankruptcy and discharge their debt.  Congress implemented the "means test" analysis as a mechanism to prevent debtors from abusing the bankruptcy process.

In a Chapter 7 proceeding, if a debtor's current monthly income is greater than the state median then a means test analysis will determine whether the Chapter 7 filing is presumptively abusive under 11 U.S.C. §707(b).  A debtor may rebut the presumption of abuse by demonstrating special circumstances under 11 U.S.C. §707(b)(2), but should he fail to do so, his case will either be converted to a Chapter 13 proceeding or be dismissed. 11 U.S.C. §707(b)(1).

In a Chapter 13 proceeding, the means test analysis first dictates whether a the applicable commitment period of a debtor's Chapter 13 plan under 11 U.S.C. §1325(b)(4) will be three years for below median income debtors, or five years for above median income debtors.  If a debtor is above median, the Chapter 13 means test then determines the debtor's disposable income under 11 U.S.C. §1325(b)(3).

The starting point for both the Chapter 7 and Chapter 13 means test is a debtor's "current monthly income,"  which does not include Social Security benefits as specified under 11 U.S.C. §101(10A).  The effect of excluding Social Security benefits precludes a debtor from being unfairly prejudiced under the means test for receiving benefits income that social policy has

10

already determined that he receive for the support of his basic welfare.  For example, this approach makes most sense where a joint debtor in a Chapter 7 proceeding receives Social Security disability income and the inclusion of these benefits under the means test could produce a presumption of abuse, possibly resulting in conversion or dismissal of the bankruptcy case. Therefore, the exclusion of Social Security benefits in calculating a debtor's current monthly income ensures that debtors receiving Social Security benefits will not be faced with unnecessary hurdles to overcome in seeking financial relief and protection provided by the bankruptcy process.

However, the exclusion of Social Security benefits from the definition of "current monthly income" and the means test analysis does not negate a debtor's obligation to contribute all of his projected disposable income toward his Chapter 13 plan payments as required by 11 U.S.C. §1325(b)(1)(B).  Congress did not mandate anywhere in the Bankruptcy Code that by excluding Social Security benefits from the definition of "current monthly income" it also intended to ignore a debtor's actual ability to repay his creditors, thus defeating the entire purpose of a Chapter 13 proceeding in cases where a debtor receives Social Security benefits. Such an interpretation would lead to absurd results that would enable the type of bankruptcy abuse that BAPCPA was designed to eradicate.  Additionally, notwithstanding the exclusion of Social Security benefits under the means test analysis, a Chapter 13 plan must also meet the requirements necessary to confirmation as set forth under 11 U.S.C. §1325(a), all of which are independent from one another.

Accordingly, in the present case, Debtor may properly exclude all Social Security benefits he and his family receives for purposes of applying the means test, but such income must still be included in determining his ability to repay his creditors and evaluated in

11

conjunction with his proposed Chapter 13 plan payments.  As such, Debtor's actual ability to repay his creditors is much greater than his disposable income reported on his means test. Indeed, Debtor has the ability to repay his creditors in full, but argues that he should not be required to due to the fact that he receives Social Security benefits.  The exclusion of Social Security benefits from the means test calculation does not also relieve Debtor from proposing a Chapter 13 Plan in good faith with the genuine intent to repay his creditors.

### C.   In Determining A Below Median Income Debtor's Disposable Income, Schedules I And J Control, Which Expressly Includes Social Security Benefits

In the case of an above median debtor, a debtor's disposable income is his "current monthly income" less specified expenses as determined by the means test under 11 U.S.C. §1325(b)(3). *Hamilton v. Lanning*, 130 S.Ct. 2464, 2470 (2010).  Thus, since "current monthly income" is defined by 11 U.S.C. §101(10A) to specifically exclude Social Security benefits, such benefits may not be accounted for when determining an above median debtor's disposable income and in turn his minimum monthly Chapter 13 plan payment. *Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011).

On the other hand, the "current monthly income" determination under 11 U.S.C. §1325(b)(3) is not applicable to below median debtors.  Instead, a below median debtor must contribute all of his "projected disposable income" toward his Chapter 13 plan payment under 11 U.S.C. §1325(b)(1)(B), which is determined by a debtor's *actual* income and reasonable expenses on Schedules I and J. *Hamilton v. Lanning*, 130 S.Ct. 2464, 2473-74 (2010); *see In re Herrmann*, 2011 WL 576753, C/A No. 10-06523-JW, at *5 (Bankr. D.S.C. Feb. 9, 2011) (citing *In re Edmunds*, 350 B.R. 636, 646 (Bankr. D.S.C. 2006) ("'Projected disposable income under §1325(b)(1)(B) is determined in this District by using a forward looking approach

where the Court looks at the amount of actual income expected to be received in the applicable commitment period without restriction by the definition of current monthly income or disposable income."); *see also In re Nicolas*, 458 B.R. 516, 519-20 (Bankr. E.D. Ark. 2011).  The official Schedule I expressly provides for inclusion of Social Security benefits in calculating a debtor's monthly income on Line 11, and "shall be construed to be consistent with these rules and the Code." Fed. R. Bankr. P. 9009.

Since Congress did not define the term "projected disposable income" within the Bankruptcy Code, courts shall apply the term's ordinary meaning when interpreting its usage within a statute. *Lanning*, 130 S.Ct. at 2471-72 ("While a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome."). Further, the established pre-BAPCPA bankruptcy practice was for courts to consider any known or virtually certain changes in a debtor's income or expenses when determining disposable income. *Id.* at 2473-74.  Additionally, pre-BAPCPA bankruptcy practices also included counting Social Security benefits when determining a debtor's projected disposable income. *In re Nicholas*, 458 B.R. 516, 519-20 (Bankr. E.D. Ark. 2011).  Thus, as the Supreme Court reiterated in *Lanning*, "Pre-BAPCPA bankruptcy practice is telling because we "'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'"" *Lanning*, 130 S.Ct. at 2473 (*quoting Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 454 (2007)).

The inclusion of Social Security benefits in a below median debtor's "projected disposable income" is consistent with the fact that on Form B22C, used by above median debtors to determine their monthly disposable income under 11 U.S.C. §1325(b)(3) specifically instructs the *exclusion* of Social Security benefits from being calculated on Lines 8 and 9 as income from

other sources. Conversely, Schedule I which is controlling for below median debtors, expressly requires inclusion of "Social Security or other government assistance" on Line 11, but neither Schedule I nor J provides the option for debtors to exclude such income from the final calculation of their monthly net income available for their Chapter 13 plan payments. As such, the construction of the Official Forms provided by the Judicial Conference of the United States is evidence that Congress intended for the inclusion of Social Security benefits in determining a below median debtor's disposable income.

If consideration of Social Security benefits were never permitted in confirming a Chapter 13 plan, then debtors would have the "discretion to dictate the amount of future disposable income they want to contribute to a plan," which would be entirely contrary to Congress's attempt to eradicate bankruptcy abuse under BAPCPA. *Nicholas*, 458 B.R. at 520 (*quoting In re Cranmer*, 433 B.R. 391, 399 (Bankr. D. Utah 2010). Thus, Social Security benefits are properly included in determining a below median income debtor's monthly projected disposable income available for Chapter 13 plan payments.

In the present case, Debtor is attempting to achieve what the court in *Nicholas* warned. Debtor argues that he is not required to propose a minimum monthly payment in his Chapter 13 plan since excluding his Social Security benefits would result in a negative net monthly income figure. Therefore, Debtor asserts that he is free to contribute as much or as little toward repaying his creditors while still obtaining the same benefits provided under a Chapter 13 proceeding. According to Debtor's theory, any Chapter 13 debtor who receives any form of Social Security benefits would not be held accountable to his or her actual ability to repay their creditors, and could dictate the amount of their monthly plan payments. On the contrary, the fundamental principles of the Bankruptcy Code require Debtor to sincerely repay his creditors to the best of

14

his abilities.  As such, Debtor's Social Security benefits must be included when determining his projected disposable income.

## II.  Nothing in the Social Security Act Grants A Debtor Immunity From Satisfying The Good Faith Requirement Under 11 U.S.C. §1325(a)(3)

A Chapter 13 plan must satisfy each provision under 11 U.S.C. §1325(a) in order to achieve confirmation, one of which is the requirement that a Chapter 13 plan has been proposed in good faith. 11 U.S.C. §1325(a)(3).  As "good faith" is an intentionally amorphous concept, bankruptcy courts must evaluate the individual circumstances surrounding each case and determine whether a debtor has proposed a Chapter 13 plan that reflects a sincere intention to repay his debts in a manner comport with his ability to repay his creditors. *Mains v. Foley*, 2012 WL 612006 at *3 (W.D. Mich. Feb. 24, 2012).  The subjective good faith test is "distinct from and independent of the objective requirement of section 1325(b) that a confirmable plan include all of the Debtors' "projected disposable income" for the relevant period." *Id.*  The separate disposable income requirement and good faith requirement work in concert with one another to prevent debtors who actually have a greater ability to repay their debts from evading their obligation to do so.  *Id.* at *4.  Further, nothing in Section 207 of the Social Security Act grants a debtor "immunity from demonstrating good faith as a pre-condition to confirmation of a Chapter 13 plan, even if in a particular case—like this one—demonstrating good faith requires including some or all of the Social Security benefits in the plan." *Id.* at *5.

The debtors in *Mains* appealed the bankruptcy court's decision denying confirmation of their Chapter 13 plans due to lack of good faith. *Id.* at *1.  Almost half of the debtors' monthly net income was attributable to Social Security benefits. *Id.*  Even after subtracting the debtors' monthly expenses, the debtors still had a surplus of $1,339.30 a month. *Id.*  Despite their actual

ability to repay their creditors in full in 30 months, the debtors proposed a Chapter 13 plan that would pay creditors only $324.00 a month over 36 months, resulting in a less than 5% distribution to their unsecured creditors. *Id.* The bankruptcy court denied confirmation of the debtors' plan and found that the plan was not proposed in good faith as the debtors were clearly able to repay their creditors in full without altering their lifestyle. *Id.* at *1-2. The debtors argued that their plan was proposed in good faith as their Social Security benefits should not be considered in the good faith analysis under §1325(a)(3). *Id.* at *2. The bankruptcy court disagreed and stated that while Social Security benefits were excluded from the objective disposable income analysis under §1325(b), such benefits were still included in the subjective good faith analysis under §1325(a). *Id.*

Upon the debtors' appeal, the district court in *Mains* ultimately affirmed the bankruptcy court's decision to deny confirmation of the debtors' Chapter 13 plan. *Id.* at *6. The district court agreed that the objective disposable income test under §1325(b) and the subjective good faith test under §1325(a) are two separate inquires that are independent from one another. *Id.* at *4. The court found that nothing in Section 207 of the Social Security Act granted the debtors immunity from satisfying the good faith requirement under §1325(a), even if doing so would require the debtors to include some or all of their Social Security benefits in their Chapter 13 plan. *Id.* at *5. Thus, the district court held that the bankruptcy court properly considered the debtors' Social Security income in its §1325(a) good faith analysis, and affirmed the decision below as the debtors did not point to any errors in the bankruptcy court's factual determination that their plan was not proposed in good faith. *Id.* at *6.

Like the debtors in *Mains*, in the current case Debtor argues that his Chapter 13 Plan was proposed in good faith. Debtor believes that since his Social Security benefits cannot be factored

16

into his disposable income analysis, *any* monthly payment he proposes satisfies the good faith requirement despite his ability to repay his creditors in full.  Similar to the reasoning of the bankruptcy court and the district court in *Mains*, the bankruptcy court below denied confirmation of Debtor's plan due to his clear ability to propose a Chapter 13 plan that repaid his creditors in full.  Finally, Debtor's Chapter 13 Plan was not proposed in good faith as he admits that he could execute a repayment plan that provides full payment on all his debts, but instead Debtor argues that he should not be held accountable to his ability to do so.

## CONCLUSION

In the interest of preserving the fundamental principle underlying the bankruptcy process that an honest debtor can be given a fresh start provided that he sincerely repays his creditors to the best of his abilities under his Chapter 13 plan, Trustee respectfully asks this Court to find that in the case of a below median debtor, Social Security benefits may be considered in determining a debtor's projected disposable income and ability to repay creditors.  Trustee further asks this Court to find that a Chapter 13 plan that proposes monthly payments which does not comport with a debtor's actual ability to repay his creditors cannot have been proposed in good faith. Finally, Trustee respectfully asks that this Court affirm the bankruptcy court's decision below denying confirmation of Debtor's Plan.

\_\_/s/ Thomas P. Gorman_____

Thomas P. Gorman

Appellee

OFFICE OF CHAPTER 13 TRUSTEE

300 N. Washington Street, Suite 400

Alexandria, VA 22314

Phone: (703) 836-2226

Fax: (703) 836-8120

VSB# 26421

On Brief:

Eva Choi

Staff Attorney

OFFICE OF CHAPTER 13 TRUSTEE

300 N. Washington Street, Suite 400

Alexandria, VA 22314

Phone: (703) 836-2226

Fax: (703) 836-8120

VSB# 81974

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 4th day of June, 2012, served via ECF to authorized users of the foregoing Brief of the Appellee to the following party:

Daniel M. Press, Esq.
Counsel for Appellant
Chung & Press, P.C.
6718 Whittier Avenue, Ste. 200
McLean, Virginia 22101

__/s/ Thomas P. Gorman_____
Thomas P. Gorman